**Brad CLARK, Appellant–Respondent,**

**v.**

**Joey M. GOSSETT, Appellee–Petitioner.**

**No. 18A02–9504–CV–204.**

Court of Appeals of Indiana.

Oct. 26, 1995.

Jack Quirk, Muncie, for appellant.

Pamela Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Brad Clark appeals from a determination of paternity, presenting the following restated issues for review:

I. Did the trial court err in failing to adhere to the notification and filing provisions of Trial Rule 53(E)?

II. Did the trial court err in admitting Exhibit No. 1?

We affirm.

The paternity determination was made following a hearing. No record was made of the hearing. For purposes of this appeal, the parties submitted the following agreed statement of facts.

"COMES now Brad Clark, by counsel, Jack Quirk, and Joey M. Gossett, by counsel, Lynn Liggett Deputy Prosecuting Attorney of the Family Support Division, and file their Statement of Evidence as follows:

1. That the Plaintiff Joey M. Gossett stated that she had sexual intercourse with the defendant one time, became pregnant and gave birth to Jacob Gossett on 3–24–93.

2. That she also stated that when she was examined by a medical doctor she was told that Bradly Clark could not have impregnated her because the Doctor thought she was already pregnant at the time she said she had intercourse with the defendant.

3. That she wrote the defendant a letter telling him he was not the father and said letter was introduced as a Respondent's Exhibit # 1.

4. That the petitioner had brought a paternity action against another male for the same child and a blood sample was taken from each party. That person was found not to be the father.

5. That plaintiff was ordered to arrange another blood test and pay for her share of the blood test but she did not have blood drawn from herself or the baby. The defendant did have a blood test.

6. That the petitioner offered the report of Roche Biomedical Laboratories as an exhibit numbered Petitioner's Exhibit # 1 and asked the defendant to stipulate the admission, the defendant stated he would stipulate that it was their report but would not stipulate to the results.

7. The defendant testified that he was only alone in the presence of the plaintiff one time and that he was intoxicated but that he did not have sexual intercourse with the plaintiff.

8. The court found the defendant to be the father of Jacob Gossett." *Record* at 28–29.

## I

■ The paternity hearing was conducted before Commissioner Stan Wyrick. Clark contends the court erred in not following the provisions of T.R. 53 pertaining to proceedings conducted before master commissioners.

On December 22, 1994, the commissioner filed an "Order Book Entry", which was signed by the regular judge on that same day. Clark does not dispute that the Order Book Entry comprises the "report" referred to in T.R. 53(E), but rather contends that the commissioner failed to notify the parties that the report had been filed and that the regular judge signed the order without affording the parties an opportunity to challenge the contents. Gossett counters that T.R. 53 contemplates the court's immediate acceptance

of the commissioner's report, and that challenges to the report are to be brought after such acceptance by the court. We conclude that T.R. 53 does not apply in the instant case.

T.R. 53 is entitled "Masters" and pertains only to proceedings conducted before a master. The special nature of a master's duties and function are reflected in T.R. 53(B), which states:

"A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in action to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it. Reference shall be allowed when the parties agree prior to trial as provided by these rules or by statute."

Subsection (C) of T.R. 53 provides that the "order of reference to the master may specify or limit his powers. . . ." These provisions reflect that a master, as contemplated in T.R. 53, is specially appointed for a particular purpose in a specific case, with powers to be designated by the appointing court.

In the instant case, Commissioner Wyrick was appointed by the judges of the Delaware Superior Courts to preside over cases before those courts involving Title IV of the Federal Social Security Act, including paternity disputes. Because Commissioner Wyrick was appointed for a term of one year, not merely one case, and was appointed to preside over all Title IV cases without specifically limited powers, the position to which he was appointed was not that of a "master" within the meaning of T.R. 53. T.R. 53, which is entitled "Masters" and is applicable only to proceedings conducted by masters, is not applicable in the instant case. Therefore, there was no error regarding noncompliance with T.R. 53.

## II

■ Gossett claimed to have had sexual intercourse with Clark and another man shortly before she learned that she was pregnant. Clark denied ever having intercourse with Gossett, but admitted that he was drunk and at the same house as Gossett at the time that Gossett claimed they had intercourse. Gossett's doctor indicated his belief that Clark was not the father of the unborn child based upon the development of the fetus compared with the time Gossett claimed to have had intercourse with Clark. Gossett wrote Clark a letter apprising him of this information, and returned a check Clark had evidently sent her for obtaining an abortion. Gossett filed a Petition to Establish Paternity and Clark was ordered to submit to blood tests. The results of the test revealed a 99.97% probability that Clark was the father. Clark contends that the court erred in admitting the test into evidence without an adequate foundation.

Ind.Code 31–6–6.1–8 provides as follows: "(a) Upon the motion of any party, the court shall order all of the parties to the action to undergo blood or genetic testing. The tests shall be performed by a qualified expert approved by the court.

(B) A party may object to the admissibility of genetic test results obtained under subsection (a) if the party files a written objection at least thirty (30) days before a scheduled hearing at which the test results may be offered as evidence. If a party does not file an objection under this subsection, the test results are admissible as evidence of paternity without the necessity of:

　(1) foundation testimony; or

　(2) other proof;

regarding the accuracy of the test results."

According to subsection (B), an objection to the results of a genetic or blood test must be filed at least thirty days prior to the hearing. The record reflects that Clark did not object to the admissibility of the test results until the day of the hearing. Therefore, according to subsection (B)(1), the test is admissible without proof of foundation.[1]

1. Clark relies upon *Baker v. Wagers* (1984), Ind. App., 472 N.E.2d 218, *trans. denied,* and *In re Paternity of Gregory* (1984), Ind.App., 469 N.E.2d 480 in arguing that the 30–day written requirement may be ignored. However, both *Baker* and *Gregory* were decided years before the legislature

Clark seeks to avoid this result by claiming that the test which was admitted in the instant case was not a "blood or genetic testing" within the meaning of IC 31–6–6.1–8. In support of this argument, Clark states: "the thirty day written objection requirement in the statute applies only to the admissibility of 'genetic test results'. Here, the genetic, DNA, results are combined with blood antigen results . . .", Appellant's Brief at 9, implying that the tests in his case are somehow different than those contemplated by the statute. We summarily reject this contention. The testing to which Clark submitted was precisely the type of test to which IC 31–6–6.1–8(b) was intended to apply.

Because Clark failed to timely file a written objection to the admissibility of the blood testing results, Gossett was not required to establish a foundation for admission of the results into evidence and Clark may not now object to the test results upon that basis. The trial court did not err in admitting the results of the tests into evidence.

Judgment affirmed.

SULLIVAN and NAJAM, JJ., concur.

engrafted the 30–day requirement into the stat-

ute. Those cases, therefore, are inapplicable.